## APPEAL OF CONSOLIDATED MUTUAL OIL CO.

Docket No. 2486.     Submitted July 8, 1925.     Decided October 28, 1925.

1. Expense of litigation *held* to be a capital expenditure.
2. The expense of redrilling and deepening an oil well to put it on a productive basis is a capital expenditure.
3. Depreciation deductions on oil wells disallowed.

*Louis Titus, Esq.,* for the taxpayer.
*John D. Foley, Esq.,* for the Commissioner.

Before GRAUPNER, TRAMMELL, and PHILLIPS.

The allegation of error alleged in the petition with respect to the invested capital of the taxpayer was waived at the hearing.

### FINDINGS OF FACT.

The taxpayer is a corporation organized and existing under the laws of California, with its office in San Francisco.

In its income-tax return for 1918 it deducted as expense $958.30 paid out as reporter's fees in reporting and transcribing testimony in a suit brought by the United States against the taxpayer. The object of this suit was to oust the taxpayer from possession of certain oil lands, to enjoin it from removing oil therefrom, and to account for all oil theretofore taken.

The court decided in favor of the taxpayer, holding that the suit was improperly brought in that an attack was not made directly upon the final certificate which had been issued by the General Land Office or to set the same aside for fraud.

An oil well was completed in 1916 and was pumped for several months. The oil, however, was mixed with so much water that it was not a commercial product. At the end of 1916 the derrick was blown down by a tornado. During 1918 the derrick was rebuilt, the pipe reset, the well was drilled some 200 feet deeper, and it was recemented in such a way as to shut off the water. Thereafter it was pumped, but the oil was mixed with water for at least 30 days. Thereafter the water greatly subsided and the well began to produce oil in sufficient quantities in comparison with the water so that it was a commercial product. The expense of redrilling and repairing the well was $12,373.13.

During the year 1918 the company wrote off for depreciation on its physical property $31,231.74. The nature of the property, the cost and the depreciation claimed are as follows:

| Character of property | Cost | Depreciation |
| --- | --- | --- |
| Wells | $448,705.52 | $25,404.13 |
| Buildings and structures | 7,003.90 | 408.00 |
| Tanks, oil and gas lines | 37,001.64 | 2,050.74 |
| Water system | 2,749.46 | 153.00 |
| Boiler plants and steam lines | 20,073.41 | 1,270.39 |
| Miscellaneous plant assets | 600.95 | 34.21 |
| Drilling and field tools | 31,586.06 | 1,675.37 |
| Horses and vehicles | 4,360.91 | 207.35 |
| Furniture and fixtures | 264.15 | 14.61 |
| Office equipment | 103.47 | 5.76 |
| Shop machinery and tools | 150.04 | 8.18 |

The practice of the company had uniformly from the beginning been to write off 1 per cent per month of all the foregoing tangible property. The Commissioner allowed the taxpayer a deduction, on account of exhaustion, wear, and tear of its physical property, an amount in excess of the amount claimed by the taxpayer, except with respect to the oil wells themselves. The Commissioner disallowed the amount of $25,404.13, claimed as depreciation on the wells, the net result being that the Commissioner disallowed depreciation in the amount of $18,754.51.

No competent testimony was introduced to show any depletion of the oil well.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

TRAMMELL: With respect to the amount paid out by the taxpayer as reporter's fees in reporting and transcribing the record in the

suit brought by the United States to restrain it from taking oil from its oil wells and to account for the oil taken, we are of the opinion that such amount was a capital expenditure.

The redrilling and deepening of the oil well in order to put it on a commercial basis is not an ordinary and necessary expense but is a capital expenditure which may be returned to the taxpayer through deductions allowed on account of exhaustion, wear and tear of the physical property involved or through the depletion allowance as the oil is extracted from the ground. The well was not upon a commercial basis when the taxpayer undertook to redrill and deepen it and it is immaterial that the well was redrilled and deepened to put it on a commercial basis instead of being drilled to completion in the first place.

With respect to the question as to whether the taxpayer should have been permitted to take a deduction on account of the exhaustion, wear and tear of its oil wells as separate and distinct from its physical property in connection therewith, the Board has no evidence upon which it can base a finding or reach the conclusion that the determination of the Commissioner was not correct. If it be conceded that the oil wells themselves depreciate and become exhausted in proportion as the oil is extracted from the land, or upon any other basis, we have no evidence as to the approximate life of the oil wells. The record does not disclose whether the Commissioner allowed the taxpayer a deduction on account of the exhaustion of its oil wells in connection with the depletion allowance, or whether the cost of drilling the wells entered into the cost of the oil extracted and was included in depletion allowances. We are unable to find from the record, therefore, that the determination of the Commissioner disallowing a claim for exhaustion of the oil wells was not correct.